## HARCUM v. MARSH.

(Filed April 8, 1902.)

1. REGISTER OF DEEDS—*Marriage—Licenses—Public Officers—The Code, Sec. 1816—Evidence.*

   The evidence in this case is held to show reasonable inquiry under The Code, Sec. 1816, by a register of deeds as to legal capacity of parties to marry.

2. REGISTER OF DEEDS — *Marriage — Licenses — Questions for Court—The Code, Sec. 1816.*

   In an action against a register of deeds for issuing license for the marriage of a girl under 18, the facts being undisputed, it is for the Court to say whether the facts show reasonable inquiry.

ACTION by Warren Harcum against S. E. Marsh and others, heard by Judge *F. D. Winston* and a jury, at Fall Term, 1901, of the Superior Court of HERTFORD County. From a judgment for the plaintiff, the defendants appealed.

*D. C. Barnes,* for the plaintiff.
*L. L. Smith,* for the defendants.

COOK, J.   This is an action by the father of the girl against the defendant Register of Deeds and his bondsmen upon his official bond, to recover the penalty of $200 imposed by virtue of Sec. 1816 of The Code. Defendant having objected for the first time in this Court that the action was brought in the name of Warren Harcum without having joined the State as a party plaintiff, plaintiff moved for leave to amend so as to make the State a party plaintiff, and to change the title of the action to that of the "State on the relation of Warren Harcum v. Marsh *et al.*," which motion is allowed. Code, Sec. 965; *Grant v. Rogers,* 94 N. C., 755, on page 760.

Of the several exceptions taken and assignments of error,

we deem it necessary to pass upon the charge of his Honor only, as that fully disposes of the case, and in it is involved the merits of the case.   His Honor charged the jury that "if they believed the defendant's own evidence, he had not made such reasonable inquiry as rendered it probable that there was no legal impediment to the marriage, and they must answer the first issue (Did the defendant, without reasonable inquiry issue the marriage license as alleged?) 'Yes,' and the second (Has the defendant incurred any penalty, and if so, in what amount?) '$200.' "

The evidence of defendant Marsh, upon which said charge was based, is as follows:  "S. E. Marsh, defendant, 1896, Register of Deeds, recalls when license was issued for Oscar Davidson and Cora Harcum.   Davidson came in February, 1898.   I think I met him on the street.   He spoke to me; said he wanted to see me; that he wanted license.   We went to office.   I asked the name of the male.   He said that it was Oscar Davidson.   Asked age, and his answer was 21.   Asked color, and his answer was white, and that he was his son. Asked name of parents and place of residence, and he said that the place of residence of son was in Virginia.   Asked name of female, and he answered Cora Harcum.   Asked color; he said white.   Being asked name of parents and their residence, he answered that the parents of the girl had their residence in Virginia.   Being asked the age of the girl, he said it was 19.   Asked Davidson if he knew her and had personal acquaintance to enable him to make oath.   I explained the law—that it was 21 for males and 18 for females.   Said that he was willing to make oath that he had known her from her youth, and that she was 19.   I asked why they came here, and he said that she wanted to get married among her friends in Mauney's Neck Township, and had recently moved from there.   I then swore him in the presence of a witness.   I placed oath on the license.   I read the oath and explained

what it meant—21 for males, 18 for females. He held Testament and took oath. Don't remember who was present, except Shaw, Lassiter, applicant and myself. Met Davidson on street. He spoke to me. Nothing was said about a runaway marriage. Davidson's appearance was that of a common farmer."

### CROSS-EXAMINED.

"Never knew Mr. Davidson, who was an entire stranger to me. I made no inquiries about him or about the parties, except from him. Said he lived in Southampton County, State of Virginia, and that all lived there. I had no suspicion, except the statement about coming here to marry. (Deposition taken before the Clerk was handed to defendant.) This is the paper and this is my signature to it; don't know of Davidson going to the Clerk; don't remember that he said he had business with the Clerk. I met him on the street and he asked me for the license; did not know any of the parties to the transaction. I had never heard of them, and did not know of them."

### RE-DIRECT EXAMINATION.

"I had no suspicion, but asked Davidson why he wanted to come here to marry, and he gave the same explanation I have given."

The facts being admitted, what is a reasonable inquiry, is a question of law to be decided by the Court. *Joyner v. Roberts,* 114 N. C., 389. Upon the facts in the case at bar, as appearing from the testimony of defendant Marsh, his Honor held, as a question of law, that he issued the marriage license without reasonable inquiry concerning the age of the girl, and instructed the jury to so find. In so instructing, his Honor was in error. To issue marriage licenses is a duty imposed by law upon the Register of Deeds. It is not the policy

of the law to obstruct or retard marriages.    But certain re-
quirements are prescribed by the statute to be complied with
before a license can be issued for the marriage of a girl *under*
18 years of age.    Those requirements do not apply if she be
eighteen or over.    Before issuing, it must "appear to him
probable that there is no legal impediment to such marriage."
If the Register in this case issued the license, knowing she
was *under* eighteen, or without reasonable inquiry as to that
fact, then he would be liable to the penalty, otherwise not.    It
is not contended that he *knew* the fact; so, does it appear from
his testimony that he made *reasonable* inquiry?    When ap-
proached by the stranger on the street, and being told that he
wanted a marriage license, he went to his office; there, in the
presence of others. Marsh made full inquiry of Davidson con-
cerning all the facts required by law to be ascertained.    The
responses were made fully, accurately and positively.    The
reason given for returning from Virginia to be married at
Mauney's Neck, whence the girl had recently moved, among
her friends there, was plausible, and not inconsistent with
natural sentiment.    Defendant explained the law to the ap-
plicant, and fully acquainted him with the law as to the re-
quired age of an infant *feme*.    While Davidson was a stranger
to defendant, yet his "appearance was that of a common
farmer," which, from common knowledge and general ob-
servation, would naturally allay any suspicion, if any existed,
and inspire confidence in the truthfulness of his statements.
Davidson expressed a willingness "to make oath that he had
known her from her youth, and that she was nineteen."
Thereupon, defendant Marsh read the oath to him and ex-
plained what it meant, and swore him in due form and placed
the oath upon the license, which was done publicly, in the
presence of the bystanders, and no effort at secrecy or con-
cealment seemed to have been made or desired.    Thus con-
fronted with the statement and oath of a man, apparently

honest and truthful, applying for a marriage license for his son and a girl whom he said he had known from her childhood, supported by a plausible and probable reason for coming to that county, in this State, for the marriage, which Marsh believed to be true, and being told that the girl's parents lived in Virginia, from whom else could he have inquired? Could it seem probable that he could get any better information by delaying the application until he could go out and inquire among people whom *he* knew, and to whom the parties were, in all probability, strangers? Would the Register have been justified in refusing the license under these conditions? The statute does not make the Register an insurer of the truth of the statements and information given him, but imposes upon him the duty of inquiry as to their good faith and truthfulness, and, if "it shall appear * * * that it is probable there is any legal impediment to the marriage of any person for whom a license is applied for, the said Register shall have the power to administer to the person so applying an oath touching the legal capacity of said parties to contract a marriage." Acts 1887, Chap. 331. With his duty in this case, it seems to us that he fully complied. The conditions under which the application was made were such as not to excite suspicion, nor did they suggest that any other information was obtainable.

In *Walker v. Adams,* 109 N. C., 481, the facts are very similar to those in the case at bar. There, the applicant was known to defendant, but he did not know his character, but had heard nothing against him; he stated to the defendant that the infant *feme* was "about nineteen years old," whereupon defendant asked if he would make affidavit to that fact, to which he replied he would, and defendant administered the oath, which affidavit was attached to the license (as was done by defendant in this case), pursuant to Chapter 331 of the Acts of 1887; and defendant, believing there was no legal im-

pediment, issued the license. But upon the trial it was shown that she was under the age. The Court held that the inquiry was reasonable, in contemplation of the statute, and that defendant, therefore, did not incur the penalty.

But the facts in *Williams v. Hodges,* 101 N. C., 300; *Cole v. Laws,* 104 N. C., 651, and *Agent v. Willis,* 124 N. C., 29, were very different from those in this case. In *Williams v. Hodges* the plaintiff, father of the girl, lived in the adjoining county, only 25 miles from Kinston. Westbrook, the applicant, was a stranger to the defendant. Defendant asked the applicant as to the residence and names of the parties, names of parents, and if the father was living, "to which he replied in the negative;" and, also, that the mother was living; again he asked "if the father and mother of Ann were living and her age," to which he (Westbrook) said, "Yes, that they were living, and that Ann was 18 or 19 years of age," and thereupon he issued the license. Westbrook was a white man of fair address and of apparent respectability. The license was issued on March 8th; on March 18th defendant wrote plaintiff that "No one has applied for license to marry your daughter Ann," and the marriage was solemnized on April 7th following. Upon these facts found, the Court held that defendant had not made reasonable inquiry as required by the statute. "The questions put to him were very general and vague; not such as to elicit directly material information, except as to the age of Ann Williams. The answer in this respect was uncertain, careless and unsatisfactory; indeed, it suggested further inquiry, but none further was made. He was not even asked if the father of the female resided in the county of Lenoir, and it seems that the defendant did not know that he did or did not. Surely such inquiry in respect to such a matter was not reasonable, nor did the inquiries, and the information so unsatisfactory, make it appear probable that the fmeale was of the age of eighteen years."

In *Cole v. Laws,* 104 N. C., 651, the Court cites *Williams v. Hodges, supra,* and says that in that case "more diligence was shown in finding out the facts and true age of the infant *feme"* than in this (*Cole v. Laws*).

In *Agent v. Willis,* 124 N. C., 29, the defendant was applied to at his residence about *two o'clock in the night,* and he refused to issue the license; but about two hours later the applicant and his companion returned, and he again declined. About two hours later he saw them and asked the applicant if he would swear to the girl's age, which he declined to do, but said "the girl had told him three days before that she was eighteen years old, but that he did not know how old she was. Shortly thereafter one Tolar made affidavit "that the *girl* had told him three days before that she was eighteen years old, and that was all he knew about it." Thereupon the license was issued. Held by the Court that "those were most suspicious circumstances, and should have put defendant on his guard at every point as to his duties," and that he did not make reasonable inquiry.

It appearing to us from the evidence submitted that the defendant Marsh had made such reasonable inquiry as rendered it probable that there was no legal impediment to the marriage, and his Honor having erred by instructing to the contrary, there was error, and a new trial must be had.

New trial.