TROLINGER v. BOROUGHS.

(Filed November 10, 1903.)

1. MARRIAGE — *Register of Deeds—Licenses—Negligence—Penalty— The Code, sec. 1816.*

The evidence in this case is not sufficient to show reasonable inquiry by a register of deeds as to the legal age of a woman to marry.

2. REGISTER OF DEEDS—*Marriage—Licenses—Questions for Court.*

In an action against a register of deeds for issuing license for the marriage of a girl under eighteen, the facts being found by the jury or undisputed, it is for the trial court to say whether they show reasonable inquiry.

ACTION by D. M. Trolinger against J. P. Boroughs, heard by Judge W. R. Allen and a jury, at July Term, 1903, of the Superior Court of RANDOLPH County. From a judgment for the defendant the plaintiff appealed.

*Jas. T. Morehead* and *G. S. Bradshaw,* for the plaintiff.
*Hammer & Spence* and *Brittain & Gregson,* for the defendant.

CONNOR, J. This action is prosecuted for the recovery of the penalty imposed by section 1816 of The Code, upon any

Register of Deeds "who shall knowingly and without reasonable inquiry issue a license for the marriage of any two persons, to which there is any lawful impediment, or whether either of the persons is under the age of eighteen years, without the consent, etc." The plaintiff testified that his daughter, for whose marriage the license complained of was issued, was at that time only a few months over thirteen years of age; that he did not give his consent thereto, did not see her married and knew nothing of it; that he lived in Greensboro in 1901. The defendant testified as a witness for and in behalf of the plaintiff; that he issued the license; that he was elected register in 1900; that Level Cross and New Salem are in the northern part of the county, fourteen miles from Asheboro, and he lived in the southern part of the county before his election, fourteen miles from Asheboro, and the county is thirty miles square; that one J. E. Phillips applied to him for the license on August 19, 1901, at 4 o'clock P. M.; he introduced himself as Phillips. The witness said to him that he did not exactly recognize him, and asked if he was related to D. M. Phillips, a man known to the witness. He said he did not know him, but supposed he was related to him, as his people came from the eastern part of the county and were related to all of that name in the county. The witness asked him to give him the names of several parties whom he knew at Level Cross, that he might ascertain if he was a citizen of the county, and he thereupon named several persons known to the witness. The witness asked him for whom he wanted the license, and he named Barney Garner and Addie Trolinger. He said they lived at Level Cross, that the girl's age was twenty and the man's twenty-three or twenty-four. He said he lived at Level Cross, and was working on a farm, and that the parents of the parties for whom he wanted the license lived at Level Cross. The witness told him that he must make affidavit. He

said that he was perfectly willing to do so, as he knew the parties and their ages. The witness warned him of the solemnity of an oath and the responsibility attached to it, if false. He made the affidavit attached to the license. He said that he worked on the river a part of the time. He was intelligent and neat in appearance; his manner and deportment intelligent and gentlemanly. There were no means in the register's office of finding the ages of persons. The witness went to the door of his office to see if the sheriff, Clerk or any other person was in their offices, as it was his habit to do when he did not know the party, to make inquiry of them. The doors were shut and he could not find any one. There were no stores near his office. None of the lawyers were in their offices. Phillips fully satisfied the witness that he was justified in issuing the license. Phillips appeared to be between twenty-one and twenty-four years of age. The witness did not know there was a Trolinger family in the county; had the tax books in his office; several hundred families were moving up and down the river to the cotton mills in that section; several hundred who did not list any taxables. There are 5,000 or 6,000 voters in the county. The witness was at work on the tax books at the time. No one came with Phillips, who said that he came in the man's place because he thought a second party necessary. The witness relied upon his statement; wanted to see the sheriff and Clerk because of their knowledge of the people. His Honor at the conclusion of the testimony instructed the jury if they believed the evidence to answer the issue in the negative. The plaintiff excepted, and from a judgment for the defendant appealed.

It was stated upon the argument that his Honor's ruling was made in deference to the decision rendered by this Court in *Harcum v. Marsh*, 130 N. C., 154. In that case the applicant for the license was one Davidson, the father of the man to be married. He stated that the parents of the girl resided

in Virginia, and she was nineteen years of age; that he had personal acquaintance with her and knew her age; that her parents had recently moved from Mauney's Neck, and she had returned because she wished to be married among her friends. The defendant then swore him in the presence of a witness. "Davidson's appearance was that of a common farmer." He was an entire stranger to the defendant, and the defendant made no inquiries about the parties except from Davidson, who said he lived in Virginia.

It may not be easy to reconcile the opinion of the Court, that the defendant in that case was not liable, with several cases in our Reports defining the term "reasonable inquiry." The circumstances attending each case necessarily vary, and each must to a very considerable extent be decided upon such circumstances. It is well settled that the facts being admitted or found by the jury, the question as to what is "reasonable inquiry" is one of law for the Court. *Joiner v. Roberts,* 114 N. C., 389. The evil intended to be remedied by the statute is improper, hasty and injudicious marriages by girls under the age of eighteen years without the written consent of their parents, or, as amended by the act of 1895, ch. 387, guardians or other persons standing *in loco parentis.* We adopt, with full approval, the remarks of *Mr. Justice Montgomery* in *Agent v. Willis,* 124 N. C., 29: "To all persons who believe that the welfare of human society depends largely upon the family relation, and that the contract of marriage should be defended by careful and just laws for the purpose of guarding against legal impediments and to prevent the marriage of those under a certain age, when the parties are presumed not to be able to contract, the duty of the Register of Deeds, the officer in our State charged with the duty of issuing marriage licenses, seems most important and most solemn. That officer must exercise his duties carefully and conscientiously, and not as a mere matter of form." It was also

said in *Williams v. Hodges,* 101 N. C., 300, that "the license should not be issued as of course to any person who shall apply for it; the register is charged to be cautious and to scrutinize the application." This and other language of like tenor used by this Court illustrates the principle by which it has been guided in effectuating the wise policy upon which our marriage laws are founded. The alarming and demoralizing frequency of divorces among us demands that the Court shall give effect to such legislation as we have to prevent hasty, ill-considered marriages, without the consent of their parents, by young women who have not reached years of discretion.

We are of the opinion that the defendant did not, upon his own testimony, make the "reasonable·inquiry" before issuing the license, which the law requires of him. The applicant was a stranger to him. He professed to live in the county and to be related to all of the name of Phillips in the county, and yet he did not know the first and only one of the name called to his attention. He came alone to the county town, and gave no reference to any person residing therein. It is true that he named several persons known to the defendant in Level Cross township. The defendant evidently was doubtful as to his duty. He went to see if the sheriff and Clerk were in their offices to make inquiry. Although he did not know of any family by the name of Trolinger in the county, he fails to examine the tax books upon which he was then at work. It is true that he would not have found the name of the girl, but he would have found the name of her father, who Phillips said lived at Level Cross, or, failing to find it, he would have discovered that the applicant was not telling the truth, or at least would have had reasonable ground to doubt his word. We cannot think that a prudent business man, under the circumstances, would have relied or acted upon the statement of Phillips, a stranger without identification, in an important matter of business. He would not have en-

trusted him with an important paper for delivery or an amount of money to be paid to some person at Level Cross.

In the case of *Cole v. Laws,* 104 N. C., 651, the applicant was known to the deputy issuing the license, "but not his character or reliableness." *Smith, C. J.,* says: "He represents a girl of fourteen to be twenty-two. Nor is it shown that anything was said about her parentage and their assent to her projected marriage. In a matter involving such grave consequences and fixing her future life, did the deputy make any reasonable effort to inform himself of the fact, and act with a prudent regard to a parent's rights?"

*Merrimon, J.,* in *Williams v. Hodges, supra,* says: "To issue a license to marry 'without reasonable inquiry,' without care and scrutiny, and when it does not appear probable to the register that it may and ought to issue, as the law contemplates, is a perversion of the statute, disappoints its just purpose, and oftentimes brings distress and ruin upon individuals and families. To prevent such evils the statute provides heavy penalties."

While we may not prescribe any rule for the guidance of the register, it would seem that "reasonable inquiry" involves at least an inquiry made of, or information furnished by, some person known to the register to be reliable, or, if unknown, identified and approved by some reliable person known to the register. This is the rule upon which banks act in paying checks, and surely in the matter of such grave importance as issuing a marriage license the register should not be excused upon a less degree of care.

It is said that if the register fails to issue the license upon a proper application he is liable to the penalty. Certainly this statute would not be construed to impose such penalty unless it was made to appear that such information was furnished the register as would induce a man of ordinary prudence upon reasonable inquiry to issue it.

Without reviewing the several cases, we think that they, certainly with the exception of *Harcum v. Marsh, supra*, lead to the conclusion that the defendant did not make reasonable inquiry. The judgment must be reversed and the plaintiff awarded a

New trial.