## S. C. GRAY v. J. M. LENTZ.

### (Filed 11 April, 1917.)

**1. Register of Deeds—Marriage License—Statutes—In Pari Materia—Reasonable Inquiry.**

Revisal, sec. 2090, imposing a penalty on the register of deeds for issuing a license without reasonable inquiry for the marriage of persons to which there is lawful impediment, or where either is under the age of 18 years, and section 2088, requiring that written consent of the parent be filed with him, should be construed together; and where the reasonable inquiry as to the age has been made by the register of deeds, he is not subject to the penalty, because he has not required the written consent of the parent provided for in section 2088.

**2. Statutes—Remedial—Register of Deeds—Marriage License.**

Revisal, secs. 2090 and 2088, requiring reasonable inquiry to be made by the register of deeds as to the age of the parties, etc., before issuing a marriage license to them, are remedial, and should be construed to prevent the mischief and advance the remedy intended.

**3. Register of Deeds—Marriage License—Reasonable Inquiry—Questions of Law—Trials.**

The question of the reasonableness of the inquiry required by Revisal, secs. 2088 and 2090, to be made by the register of deeds before issuing a marriage license, is one of law where the facts are not disputed.

**4. Same—Oath of Applicants—Unknown Applicant.**

Where it appears that a register of deeds issued a marriage license for a female under the age of 18, against the consent of her parents, living in another county, but accessible by telegraph and telephone, upon the application of two parties unknown to him, who proved to be of bad character, and of whose character he made no investigation, and it appears that one of them, claiming to have known the female all of her life, had refused to swear to her age upon oath, and returned with the other, who also claimed to have known her, and who stated she was 18 her last birthday, and produced an unsigned letter purporting to be the parents' consent, and upon both of them making oath as to the age given, the certificate was issued: *Held*, insufficient as to the question of "reasonable inquiry," and a charge of the trial court submitting the case to the jury is reversible error.

CIVIL ACTION, tried before *Starbuck, J.*, in FORSYTH County Court, and judgment for defendant afterwards affirmed in the Superior Court at September Term. 1916, *Long, J.*, presiding.

The action was brought to recover the penalty of $200, allowed by Revisal, secs. 2088 and 2090, for issuing a marriage license contrary to the provisions of those sections.

The material facts are that one Charles Stanley applied to defendant on 28 August, 1915, for a license to marry Myrtle Gray, daughter of

plaintiff, who was at the time 16 years and about 4 months old. Stanley went to the defendant's office with John Hull, who was asked by the defendant, according to Hull's evidence, if he knew the age of the girl, to which he replied that he had known her all his life, and that "to the best of his knowledge or the best he could find out, she was about 18 years old—looked like a girl about 18." The defendant told him "he would have to swear to her age," and he said: "I could not do that," and defendant then said: "You can't get the license." Chris Edwards was then brought to the office, who, John Hull testified, looked like he was drunk—was drinking the day before and was drunk on the train and fighting the night of August 28. Defendant stated that he did not appear to have been drinking when in his office in the afternoon. Chris Edwards stated to the defendant that he knew Myrtle Gray's age, was her first cousin and had known her all her life, and that she was 18 years old on her last birthday. Defendant then warned both Stanley and Edwards as to the seriousness of the oath they were about to take, and replied: "We can take that oath all right; we know what we are doing." The oath was administered and signed by them and the license issued.

Defendant testified:

Q. Told you where Mr. Gray lived? A. Yes; and I asked Mr. Stanley about phoning, and he said they had no phone.

Q. You knew there was a telegraph station here and at Mount Airy? A. Yes; but he said Mr. Gray lived out in the country.

Q. The truth of the whole matter is, that you relied solely on what Chris Edwards and Charlie Stanley said? A. No.

Q. I will ask you if you didn't rely solely on the statements and information furnished you by Charlie Stanley and Chris Edwards, and the affidavit furnished you and on the license? A. Of course; that's what I had to do.

Q. And nothing else but that? A. No; had to rely on what they all said.

Q. You didn't phone Mr. Gray? A. No, sir.

Q. You didn't telegraph? Answer: "No, sir."

Q. Didn't make any inquiry except from Chris Edwards and Charles Stanley? A. Mr. Hull.

Q. Oh, well, that was in the morning. You didn't go out and see anybody in town about it? A. No, sir.

Q. Did you know Chris Edwards and Charlie Stanley up until that time—until they came in your office that day. A. No, sir.

Q. Had you ever seen them? A. I don't know; I might have.

Q. To know them? A. No, not to know them.

Q. You didn't know what kind of character either one of them had?
A. No, sir.

The defendant knew that Charles Stanley and the Grays lived in Surry County and that Stanley had come to Forsyth County for a marriage license. Defendant further testified:

"Q. Isn't this the truth about it: after you had found a man that would swear to the affidavit, Chris Edwards and Charlie Stanley—after they had agreed to swear to that affidavit, you issued the license—isn't that the truth? A. No. After he brought Mr. Edwards in, and I explained the oath to them, and they both took it, I issued the license."

There was some evidence given by defendant's witness W. A. Mickle that when Stanley came back in the afternoon he showed him an unsigned note which he said was from the father and mother of the girl, but that he told him it would not do, as there was no evidence that it was genuine, and when defendant came in he spoke to him about it and added that "he had turned it down," whereupon defendant said: "It was the same parties who had been in that morning and did not have sufficient evidence of the girl's age." The witness W. A. Mickle testified further that the license was issued on the affidavit of Stanley and Edwards as shown on its face. There was evidence of the bad character of Charles Stanley and Chris Edwards and that Edwards is not related to the girl, and is not known by her family, and was not heard of before. He is a cousin of the Allens of Hillsville, Va. The girl lived with her parents in Mount Airy, and the family had access to a telegraph station near by and a phone across the street, though there is no phone in their home. The marriage took place on 29 August, 1915, after the license was issued, but the father did not know that the license had been issued until Monday, 30 August, when he read the notice of it in the newspaper. He then wrote to the court clerks in the adjoining counties, "and fought against it." He wrote to Stuart and Hillsville in Virginia, but did not wire or phone to Mr. Lentz, because he did not think Charles Stanley would leave his own county and go to another, in the same State, for a license. The parents had not consented to the marriage of their daughter. Defendant inquired of Stanley why they had come from Surry County for a license, but what he or they said in answer to his inquiry does not appear. None of the parties, John Hull, Charles Stanley, and Chris Edwards, was known by defendant, but they were absolute strangers to him. There were telephone and telegraph lines connecting Mount Airy with Winston-Salem.

The court charged the jury, in part, as follows: "The law requires that a register of deeds should make such inquiry as a prudent busi-

ness man, acting in the most important affairs of life, would make; to make such inquiry not as a mere matter of form, but carefully and conscientiously, and as a prudent bhsiness man—I will quote again— acting in the most important affairs of life, would make. Now, if he did make such inquiry as I have explained to you that the law requires him to make, then you would answer the second issue in his favor, 'No.' If he failed to make such inquiry, then you answer the issue in favor of the plaintiff Gray, 'Yes.' The evidence shows, although the register of deeds had no information to that effect, that Stanley and Edwards or at least there is evidence to the effect that Stanley and Edwards were men of bad character. The evidence, if believed, shows that all three of these men—Stanley, Edwards, and Hull—were strangers to the register of deeds, and that he had no information in regard to them from any person outside of themselves, and that he made no attempt to get in communication with the parents of the girl, but that he issued the license from information obtained from these three men, and that is all the information that he had. It is for you to say whether or not he discharged his duty under the rule of law as I have laid down to you. It is for you to say whether or not he made reasonable inquiry. The plaintiff contends that he did not make the inquiry that a man of ordinary prudence would make in the discharge of important business affairs, but relied upon the statements of men who were utter strangers to him. On the other hand, the defendant contends that, all things considered, he was taking the affidavit of two of the men—one of them, as he was informed, being her cousin, although the evidence introduced by the plaintiff, if believed, shows as a matter of fact that he was not her cousin; and also upon the statement of Mr. Hull; all of the parties stating to the register of deeds that they had known the girl practically all their lives, or her life, and that that was sufficient to convince a man of ordinary prudence, in the discharge of important business affairs, that he could safely rely and act upon their statement, upon information laid before him in issuing the license."

The jury returned the following verdict:

1. Was Myrtle Gray, at the time of the issuing of the marriage license, under the age of 18 years, as alleged in the complaint? Answer: "Yes."

2. Did the defendant knowingly or without reasonable inquiry as to the unlawful impediment issue a marriage license to Charley Stanley and Myrtle Gray, as alleged in the complaint? Answer: "No."

3. If so, what sum, if any, is the plaintiff entitled to recover as penalty therefor? No answer.

Judgment for defendant upon the verdict, and plaintiff appealed.

GRAY *v.* LENTZ.

*E. C. Bivins·and Manning & Kitchin for plaintiff.*
*L. M. Swink and Gilmer Korner for defendant.*

WALKER, J., after stating the case: There is no real controversy about the material facts in this case, and if they are considered in the view most favorably to the defendant, our opinion is that there was not reasonable inquiry by the defendant, so that it could appear to him that the parties were 18 years old or probable that there was no legal impediment to the marriage between them. Revisal, secs. 2088, 2090, which provides that a register of deeds "who shall knowingly or without reasonable inquiry, personally or by deputy, issue a license for the marriage of any two persons to which there is any lawful impediment, or where either of the persons is under the age of 18 years, without the consent required by law, shall forfeit and pay $200 to any parent, guardian, or person standing *in loco parentis* who shall sue for the same." Section 2090. It is provided by section 2088 that written consent of the parent to the marriage shall be filed with the register where either of the parties is under 18 years of age, but the two sections have generally been construed together, as they relate to the same subject. The statute is an exceedingly important one and was enacted to prevent hasty and improvident marriages. It is remedial in its nature, as it furnishes the means, and the remedy, for the forestalling of all evasions or violations of its provisions by the tricks and contrivances of the ardent and artful lover, and should be construed and enforced so as to suppress the mischief and advance the remedy. The duty of the register is to demand the production of the written permission of the parent, or to act with care and caution in ascertaining the age of the parties, by a reasonable and proper inquiry, such as a man of ordinary prudence would make in important affairs of his own. It has been held that when the facts are not disputed, what is a reasonable inquiry is a question of law. *Joyner v. Roberts,* 114 N. C., 389; *Joyner v. Harris,* 157 N. C., 295. Some rules have been formulated for our guidance in cases of this kind, and they will be found in the last cited case. They are founded upon prior decisions of this Court, and are deemed to to be sound and firmly settled. We need not restate them here, but simply refer to several cases where, as we think, the law has been stated directly contrary to the charge of the court upon the vital and decisive question involved in this appeal. *Justice Merrimon* said: "The license shall not be issued as of course to any person who shall apply for it. The register is charged to be cautious and to scrutinize the application; it must appear probable to him, upon reasonable inquiry when he has not personal knowledge of the parties, that the license may

and ought to be issued. The probability upon which the register should act is not such as arises from conjecture . . . but from inquiry of trustworthy persons known to the register who can and do give pertinent information called out by similar inquiry, presently or within a reasonable time; from the examination of pertinent records and entries; from inquiry as to like events, and from the like inquiries; and the evidence thus elicited should render it probable—more likely than the contrary—that the license should be issued in pursuance of the application for the same. . . . To issue a license to marry 'without reasonably inquiry,' without care and scrutiny, and when it does not appear probable to the register that it may and ought to issue, as the law contemplates, is a perversion of the statute, disappoints its just purpose, and often-times brings distress and ruin upon individuals and families. To prevent such evils the statute provides heavy penalties. . . . Surely such inquiry in respect to such a matter was not reasonable nor, did the inquiries and the information, so unsatisfactory, make it appear probable that the female was of the age of 18 years. The mere personal appearance of an entire stranger was not evidence to create such probability; it was scarcely ground for conjecture. That an entire stranger, not vouched for, should make such an application was rather ground of suspicion that it was not made in good faith, and this should have prompted further and satisfactory inquiry before issuing the license. *Coley v. Lewis,* 91 N. C., 21; *Bowles v. Cochran, supra." Williams v. Hodges,* 101 N. C., 300.

The rule is well stated in *Trolinger v. Boroughs,* 133 N. C., 315, by *Justice Connor,* as follows: "While we may not prescribe any rule for the guidance of the register, it would seem that 'reasonable inquiry' involves at least an inquiry made of, or information furnished by, some person known to the register to be reliable, or, if unknown, identified and approved by some reliable person known to the register. This is the rule upon which banks act in paying checks, and surely in the matter of such grave importance as issuing a marriage license the register should not be excused upon a less degree of care. It is said that if the register fails ot issue the license upon a proper application he is liable to the penalty. Certainly this statute would not be construed to impose such penalty unless it was made to appear that such information was furnished the register as would induce a man of ordinary prudence upon reasonable inquiry to issue it."

The facts in this case, which are claimed to show reasonable inquiry, are certainly no stronger than those in *Trolinger v. Boroughs,* and we do not think they are as strong. In *Cole v. Laws,* 104 N. C., 651, the rule is thus stated in the syllabus: "When a register of deeds issues a

license for the marriage of a woman under 18 years of age, without the assent of her parents, upon the application of one of whose general character for reliability he was ignorant, and who falsely stated the age of the woman, without making any further inquiry as to his sources of information: *Held* that he had not made such reasonable inquiry into the facts as the law required, and he incurred the penalty for the neglect of his duty in that respect." Likewise, in *Morrison v. Teague,* 143 N. C., 186, it was held that, "In an action against a register of deeds to recover the penalty under Revisal, sec. 2090, for issuing a marriage license contrary to its provisions, where the uncontradicted evidence showed that the register took the word of the prospective bridegroom and his friend, neither of whom he knew, as to the age of the young lady, and made no further inquiry of any one, the court should have given the plaintiff's prayer for instruction, that as a matter of law defendant failed to make reasonable inquiry as to the age of the plaintiff's daughter." The present *Chief Justice* said in *Laney v. Mackey,* 144 N. C., at p. 634: "The application was made by a man whose name was not known to the defendant, whom he does not show to have been trustworthy, and as to whom the only evidence is that his general character is bad. Such inquiry as the defendant made in this case was not reasonable. It was purely perfunctory and did not furnish the security against a violation of the law required by a proper observance of the requirements of the statute." The same rule was adopted by the Court in *Agent v. Willis,* 124 N. C., 29, where *Justice Montgomery* says, at p. 33: "The defendant seemed to think that an oath on the part of anybody was all that was necessary to authorize him to issue the license. But the character of the witness and accuracy of information are the things that the register of deeds should look to when he issues a license for marriage, in cases where there is doubt about the age of the parties." The language of *Justice Brown,* in *Morrison v. Teague,* 143 N. C., 186, follows closely the facts of our case, and is very suggestive of the real principle and established rule which should control the decision of it: "The learned counsel for the defendant, Mr. Gwaltney, most earnestly contended in his argument that upon a fair interpretation of the words 'reasonable inquiry,' the charge of his Honor should be sustained. Notwithstanding we find ourselves unable to reconcile this view with very recent decisions of this Court, we agree with counsel that upon the evidence in the record the question was one of law, and that his Honor was correct in so holding. The uncontradicted evidence shows that the register took the word of the prospective bridegroom and his friend as to the age of the young lady, and made no further inquiry of any one; that the

register did not know either Kennedy or his friend. The register's suspicions seem to have been aroused, for he inquired why they applied for license in Taylorsville, as the girl lived in Iredell; nevertheless, he made no further inquiry." *Chief Justice Smith* said in *Cole v. Laws,* 104 N. C., 656, when referring to facts not substantially dissimilar to those in this case: "In a matter involving such grave consequences and fixing her further life, did the deputy make any reasonable effort to inform himself of the fact, and act with a prudent regard to a parent's right in granting and so soon following the license by consummating the marriage itself? The case cited for the defendant (*Bowles v. Cochran,* 93 N. C., 398) is not at variance with the view taken of the facts of the present case. There a paper, without signature, however, was produced before the register, giving the age, by one known to him to be of good character and trustworthy, and the applicant stated that he knew her age to be that stated in the writing—18 years. There was nothing calculated to awaken suspicion in the register's mind of 'the truthfulness of the representations, and it was held that the penalty had not been incurred '(in this case). No such favoring circumstances attend the action of the deputy to excuse his precipitate action. He manifests an inexcusable indifference to the results of his action, and risks the well-being of others upon representations, not themselves suspicious, which have no outside support. This case is not like *Williams v. Hodges,* 101 N. C., 300, in which more diligence was shown in finding out the facts and the true age of the infant *feme;* and yet it was held that the register had been remiss and culpably careless in issuing the license. In the opinion *Merrimon, J.,* says: 'To issue a license to marry, without reasonable inquiry, without care and scrutiny, and where it does not appear probable to the register that it may and ought to issue, as the law contemplates, is a perversion of the statute, disappoints its just purpose, and oftentimes brings distress and ruin upon individuals and families. To prevent such evils that statute provides heavy penalties.'" In *Furr v. Johnson,* 140 N. C., 157, *Justice Connor* repeated the rule in language which we take from the 4th headnote: "While the court may not prescribe any rule for the guidance of the register, it would seem that 'reasonable inquiry' involves at least an inquiry made of, or information furnished by, some person known to the register to be reliable, or, if unknown, identified and approved by some reliable person known to the register." The case of *Joyner v. Harris,* 157 N. C., 295, while in some respects not like this one, is yet, in principle, not unlike it. It referred to the rule which, as we have said, had been settled for some time in several decisions of this Court, that the register should have some reliable information before he issues

the license, and not act blindly or too confidingly upon the statements of mere strangers, and especially those who are directly interested and under a strong temptation to falsify, as here. We adopted and applied the familiar rule formulated in previous cases and held that sufficient inquiry had not been made. It is true that in *Joyner v. Harris* we treated the information given as to her age as practically a statement of the girl herself; but the case is otherwise decisive of this one. It was there said: "If we should hold that a register of deeds can satisfy himself as to the essential facts upon such an inadequate investigation as was made in this case, we would defeat the very object and purpose of the statute to throw safeguards about the young and inexperienced, who would by reason of their youthful impulses be liable to enter into so solemn and serious a relation lightly and unadvisedly and not soberly, discreetly, and reverently, as they should do and as the best interests of society require to be done."

The fact that the register administered an oath to the applicant and his friend does not, of itself, exonerate him. He is permitted by the statute to do so, that he may the better elicit the facts, and his doing so or failing to do so would be but a circumstance for the jury to consider. *Furr v. Johnson, supra.* The defendant relied upon *Bowles v. Cochran,* 93 N. C., 399; *Walker v. Adams,* 109 N. C., 481, and especially on *Harcum v. Marsh,* 130 N. C., 154. It appeared in *Bowles v. Cochran* that "the person who produced the paper (as to the age), was known by the register to be a man of good character and reliable, and he stated that he knew the statement in the paper to be true." Not at all like this case, but comes directly within the correct rule. *Walker v. Adams* was a. case of the same kind. The party was well known to the register, and there was nothing against his character, and this was treated by the court as some evidence of his good character and reliability upon which the register might depend. The last case, *Harcum v. Marsh,* while not exactly like this case, there being at least a legal shade of difference, has been criticized and its weight and authority as a precedent greatly diminished and impaired, if the case has not been disapproved. Referring to that case in *Trolinger v. Boroughs,* 133 N. C. at p. 315, *Justice Connor* said: "It may not be easy to reconcile the opinion of the court, that the defendant in that case was not liable, with several cases in our reports defining the term 'reasonable inquiry.'" And again at p. 318: "Without reviewing the several cases, we think that they, certainly with the exception of *Harcum v. Marsh, supra,* lead to the conclusion that the defendant did not make reasonable inquiry." Besides, *Justice Merrimon* said in *Williams v. Hodges, supra,* at p. 304: "The mere personal appearance of an entire stranger was not

evidence to create such probability (as to there being no legal impediment)—it was scarcely ground for conjecture." If those cases conflict with the ones we have cited as stating the correct rule, we would not regard them as controlling.

In this case the evidence shows that the defendant relied exclusively upon the statements of mere strangers, who proved to be men of bad characters. They either knew nothing of the girl's age or, if they did know it, they swore falsely as to the fact, for she was just 14 years old at the time. John Hull had put the defendant on his guard by refusing to swear to her age, or even that it was about 18 years, though he had known her, he stated, all her life. Chris Edwards, who turned out to be a perjurer, and appears to have been a bad man generally, was not calculated by his demeanor, even if not drunk, to inspire confidence in his statements. His manner was not altogether that of a trustworthy man. But when the evidence is sifted, we find nothing but the bare statements of entire strangers upon which the defendant based his action in issuing the license, and we hold that there was no "reasonable inquiry" within the meaning and intent of the law. If a register is justified in issuing a license for a marriage of two young persons under the circumstances disclosed in this record the statute would be of no practical value; its main object would be defeated, and it had just as well be repealed, because there is no ordinary man who could not make as good a showing, and sometimes with little effort, as we find in this evidence. The convenient and accommodating friend is not always hard to find. The statute was passed to prevent this kind of imposition upon the register. The trial court should have charged the jury, as requested by the plaintiff, that there was no reasonable inquiry, if the facts were as stated by the witnesses.

There was error in affirming the judgment of the county court, and it will be so certified, to the end that proper proceedings be taken to set aside the judgment and verdict, so that there may be a new trial.

Error.