C. J. JULIAN v. J. S. DANIELS.

(Filed 15 May, 1918.)

1. **Register of Deeds—Marriage License—Statutes—Reasonable Inquiry— Evidence—Questions of Law.**

   The question of reasonable inquiry to be made by the register of deeds as to the age of the woman for whom a marriage license is requested, or as to the consent of those required by the statute, Revisal, sec. 2088, is one of law when the evidence is not conflicting.

2. **Same—Consent—Penalty.**

   Where the uncontradicted evidence tends only to show that a register of deeds issued a license for the marriage of a woman under 18 years of age without the consent of her father, who lived about 20 miles distant, was well known in his community, accessible by telephone, and solely upon the oath of the prospective groom and his friend, unknown to him,

and that he only made further inquiry of one person known to him, who was unaware of the information desired: *Held,* such inquiry was not reasonable under the statute, as a matter of law, and the register of deeds is liable for the penalty at the suit of the father. Revisal, secs. 2088, 2090.

APPEAL from *Cline, J.,* at the August Term, 1917, of DAVIE.

Civil action to recover of defendant, the register of deeds of Davie County, the penalty of $200 allowed by the statute, sections 2088 and 2090 of the Revisal, for having issued a marriage license for plaintiff's daughter, Nona Thelma Julian, then about 16 years of age, to one Floyd Kincaid, without the consent of her parents and without reasonable inquiry as to her age, she being at the time under the age of 18. There was no claim or evidence that any written consent had been given by the parents, guardian, etc., and on the issue as to reasonable inquiry the material testimony was as follows:

"C. J. Julian, the plaintiff: I live in Rowan County, six or seven miles from Cooleemee, N. C., and have been living around there for twenty years. My daughter, Nona Thelma Julian, who was married to Floyd Kincaid on the 14th day of April, A. D. 1917, was born on 23 March, 1901, and was just a little past sixteen years of age at the time of her marriage. A few weeks after the birth of Nona Thelma Julian, my wife, in my presence, entered her name and the date of her birth in the family Bible, and this (exhibits the family Bible and testifies that the name is correct) is the entry she made: 'Nona Thelma Julian was born March the 23, 1901.'

"Floyd Kincaid had been to my house to a party, but I did not know that he was going to see my daughter, Nona Thelma Julian. I found on Sunday, after they had obtained marriage license at Mocksville, N. C., to get married, that they were married. It was a run-away marriage and I did not give my consent. I called for the register of deeds at Mocksville, N. C., over the telephone and a man answered who said he was the register of deeds for Davie County. I asked him if Floyd Kincaid had secured marriage license for Nona Thelma Julian, and he said he did.

"Cross-examination: My daughter and Floyd Kincaid lived near Second Creek Branch in Rowan County, N. C. I had nothing against him and did not threaten to run my daughter away from home. He did not visit my home; was only there one time. If other times, he slipped in. I could not tell you how they are getting along; we are peaceable. G. D. Daniels, witness, is a first cousin to my daughter. He lives three miles from me around the road, and has been living there for two years. I have married twice, and Nona Thelma Julian is the daughter of my first wife."

Grover Swicegood, a witness for the plaintiff, testified as follows (direct examination): "I live in Davie County. On or about the 14th day of April, 1917, in company with J. C. Shepard, Mr. Barnes, Kincaid and Daniels, Floyd Kincaid applied for license to marry Nona Thelma Julian. The register of deeds called me in from the machine and asked me if I knew the parties applying. I told him that I knew Kincaid, but I did not know the girl, Nona Thelma Julian, and that I did not know the witness Daniels, and that I did not know the girl's age.

Cross-examination: "I have known Floyd Kincaid about eight years and Mr. Daniels, the defendant, about seven years. I never knew C. D. Daniels, the witness, at all. I went to school with Floyd Kincaid one winter, and think he was about 21 years old, and he is all right as far as I know."

Redirect examination: "I did not know the girl, and there was no one there who did know her."

Recross-examination: "The witness G. D. Daniels was in the machine and said that was his name, but I did not know him."

The witness Swicegood was later recalled by the court and testified further as follows:

Question by the Court: "What did the register, Mr. Daniel, say to you?" Answer: "He came to the door and called to me to come in, and I went in and he asked me if I knew the parties applying for license, and I told him I knew Kincaid and did not know the girl or the other witnesses, and he asked me if there was any trouble, and I told him none that I knew of."

Q. (By the Court): "Was there anything else said?" A. "Not that I remember."

The defendant, a witness in his own behalf, testified as follows:

"J. S. Daniel, the defendant, testified as follows (direct examination): I have been register of deeds for Davie County for three years. I issued a marriage license for Nona Thelma Julian and Floyd Kincaid. Mr. Kincaid, Mr. Daniels, Mr. Swicegood, and Mr. Barnes and another gentleman in the machine I did not know, came to my house about 6 o'clock P. M. I came up to the office with them. Kincaid and Daniels came into the office and said there was no trouble; that the girl was 19 years old; that they lived near her and had gone to school with her. Mr. Swicegood said that he knew Kincaid and that they did not run away as he knew of. I swore Kincaid and Daniels on the Bible after reading the oath to them. Swicegood said that he had known Kincaid for seven or eight years, and that he, Kincaid, was a good man as far as he knew; that he did not know the witness G. D. Daniels.

"The oath taken by Kincaid and Daniels was as follows:

"F. A. Kincaid and G. D. Daniels, being duly sworn, say that the parties applying for license are of lawful age and that, so far as he is informed and believes, there is no lawful cause or impediment forbidding said marriage.

F. A. Kincaid.

G. D. Daniel.

"Sworn to and subscribed before me, this 14 April, 1917.

J. S. Daniel."

Cross-examination: "I had closed my office and was at home in the afternoon when a man by the name of Kincaid came to my home for a marriage license. I did not know him and did not know where he lived. I have parties who live in town to come as late as 9 o'clock P. M. for license. I knew some of the parties in the crowd, but did not know the girl. They said they lived in this county. The only one in the crowd whom I knew was Mr. Swicegood, and he told me he did not know the girl Nona Thelma Julian. I knew there were telephones, but did not telephone to Cooleemee or any other place, and did not ask the sheriff of the county concerning it. I thought all the parties were citizens of Davie County and lived near Cooleemee, N. C. I did not think it my duty to make any inquiry other than taking their oath and having them sign the same. I did not think it was my duty to find some one who knew the girl. I made no further inquiry except taking the oath of Mr. Kincaid and Mr. Daniels. I never swore Mr. Swicegood."

Redirect examination: "I asked George Daniels if he knew her age, and he said she was his first cousin and that he had known her all his life."

Plaintiff also introduced the family Bible.

On the issue as to reasonable inquiry, his Honor was of opinion and so construed the inquiry that, on the entire testimony if believed by the jury, including that of defendant, no reasonable inquiry had been made. There was verdict for plaintiff; judgment, and defendant excepted and appealed, assigning for error chiefly: (1) The charge of his Honor on the second issue as indicated. (2) For that, on the facts in evidence, the question of reasonable inquiry should have been submitted to the jury.

*T. Frank Hudson, J. G. Hudson, and T. G. Furr for plaintiff.*
*A. G. Grant, Jr., for defendant.*

Hoke, J., after stating the case: There is no substantial difference in the testimony relevant to the issue, and, under our decisions on the subject, his Honor correctly held that the question of reasonable inquiry was one of law for the court. *Gray v. Lentz,* 173 N. C., 346; *Joyner v.*

*Harris,* 157 N. C., 296; *Furr v. Johnston,* 140 N. C., 157; *Joyner v. Roberts,* 114 N. C., 389. And, on the record and facts in evidence, we concur also in his Honor's ruling that in this instance no reasonable inquiry was made. We have held in several well considered cases that where a matter of this kind necessarily depends upon inquiry, the register of deeds must seek his information from persons known by him to be reliable, or, if unknown, identified and approved by some reliable person known to be reliable. Assuredly so when, as in this case, such sources of information are open to him and readily accessible.

This test of responsibility, laid down by *Associate Justice Connor* in *Trolinger v. Boroughs,* 133 N. C., 312, as the proper construction of the statute and the fair deduction of the cases interpreting the same, was again formally stated by the same learned judge in *Furr v. Johnston,* 140 N. C., 157, and has been repeatedly approved and applied by the Court in sustaining recoveries for this penalty. *Gray v. Lentz, supra; Joyner v. Harris, supra; Morrison v. Teague,* 143 N. C., 186 *Agent v. Willis,* 124 N. C., 29; *Cole v. Laws,* 104 N. C., 651.

In illustration of the position, it was held in *Morrison v. Teague, Associate Justice Brown* delivering the opinion, that "In an action against a register of deeds to recover the penalty under Revisal, sec. 2090, for issuing a marriage license contrary to its provisions, where the uncontradicted evidence showed that the register took the word of the prospective bridegroom and his friend, neither of whom he knew, as to the age of the young lady, and made no further inquiry of any one, the court should have given the plaintiff's prayer for instruction that as a matter of law defendant failed to make reasonable inquiry as to the age of plaintiff's daughter."

And in *Cole v. Laws, supra*: "When a register of deeds issues a license for the marriage of a woman under 18 years of age without the assent of her parents, upon the application of one of whose general character for reliability he was ignorant, and who falsely stated the age of the woman, without making any further inquiry as to his sources of information: *Held,* that he had not made such reasonable inquiry into the facts as the law required, and he incurred the penalty for the neglect of his duty in that respect."

And in *Joyner v. Harris*: "It is not a reasonable inquiry by the register of deeds as to the age of the prospective bride which will relieve him of the penalty of Revisal, sec. 2083, forbidding the issuing of a license for the marriage of a woman under 18 years of age without the consent of the person designated by the statute, for him to rely solely upon the answers of those whom he did not know but merely trusted because of their manner and appearance, their information as to the age of the woman appearing to depend only upon what she had told

them, and when by the exercise of reasonable care and diligence a means of obtaining reliable information could have been made available. *Cole v. Laws,* 104 N. C., 651; *Morrison v. Teague,* 143 N. C., 186, cited and applied."

In the cases cited for defendant, *Walker v. Adams,* 109 N. C., 481; *Bowles v. Cochrane,* 93 N. C., 398, and others, all of them so far as examined, except *Harcum v. Marsh,* 130 N. C., 154, the register acted upon information of parties known to him who professed also to be cognizant of the facts and where there was no reason for him to suspect the truth of their statements. The case of *Harcum v. Marsh,* to which we were also cited by defendant, has been disapproved in subsequent decisions as not being a helpful guide to the true interpretation of the statute. *Gray v. Lentz, supra; Trolinger v. Boroughs, supra.*

Recurring to the testimony, it appears that this was a run-away match where a license was issued by defendant for the marriage of plaintiff's daughter, residing with him at the time, and who was only 16 years of age; where no consent of any kind had been given and the father did not know or have any reason to believe that the young man had been paying his daughter attention likely to result in marriage; that on the occasion in question a party of four men came to his home in an automobile about 6 o'clock P. M., after office hours, and applied for a license for the marriage of Floyd Kincaid, one of the party, to plaintiff's daughter, Nona Thelma, not present; that the defendant practically issued the license on the statements of the prospective husband and his young friend calling himself G. D. Daniel, neither of whom was known to the register; that the witness Swicegood, who was known to the register, told him that he did not know the girl nor know her age, and that he did not know the witness Daniel; that he knew Kincaid and did not know anything against him. It further appeared that the father lived at Cooleemee, a village in Rowan County, near the Davie County line, and had done so for 20 years past, accessible by telephone, and no effort was made to communicate with the father or any of the girl's relatives. The witness Swicegood, recalled by the court, stated that the register came to the door and called the witness in and asked him if he knew the parties applying for license, and that the witness replied that he knew Kincaid but did not know the girl or the other witnesses and there was no trouble that witness knew of, and defendant having testified that Swicegood told him he did not know the girl and that defendant "did not telephone Cooleemee or any other place, and did not ask the sheriff about it; that he did not think it was his duty to make any inquiry other than taking their oath and having them sign the same; that he made no further inquiry except taking the oath of Mr. Kincaid and Mr. Daniels."

It has been often shown in our decisions on the subject that this requirement of reasonable inquiry is not merely a formal matter, which is met by taking the oaths of the husband or other parties unknown to the register, but it is expressive of a sound principle of public policy designed to protect immature persons from hasty and ill-advised marriages, made without the consent of their parents or guardians or those having properly the care over them.

Speaking to the question in *Agent v. Willis, supra,* Montgomery, J., said: "To all persons who believe that the welfare of human society depends largely on the family relation and that the contract of marriage should be defended by careful and just laws for the purpose of guarding against legal impediments and to prevent the marriage of those under a certain age when the parties are presumed to be unable to contract, the duty of the register of deeds, the officer in our State charged with the duty of issuing marriage licenses, seems most important and most solemn. That officer must exercise his duties carefully and conscientiously and not as a mere matter of form."

On careful consideration of the facts in evidence, we are of opinion that the cause has been correctly tried and judgment in plaintiff's favor should be affirmed.

No error.