Civil action to recover of defendant, Register of Deeds of Davidson County, the penalty of two hundred dollars allowed by sections 2500 and 2503, Consolidated Statutes, for issuing a marriage license to one John W. Galloway and plaintiff's daughter, Alma Lemmons, without *Page 239 
the consent of her parents and without reasonable inquiry as to her age, she being at the time under the age of eighteen.
Upon the question of reasonable inquiry, the only point of difference in the case, there was evidence on behalf of plaintiff tending to show that his daughter lived with him in Winston-Salem at the home of one R. F. Bryant; that she was only fifteen years old, having reached this age on her last birthday, 31 March, 1920, and that plaintiff, at the time, did not know of or consent to his daughter's marriage. R.F. Bryant testified: "I know Alma Lemmons. She was living with her father, C. E. Lemmons, at my house. She was only a child. I would call her about fifteen years old."
The defendant, F. E. Sigman, testified that on 23 April, 1920, John Galloway made application to him, as Register of Deeds of Davidson County, for license to marry Alma E. Lemmons. And further: "I did not know John Galloway. At the time of the application there were present Ernest Lemmons and Alma Lemmons, and I took the statement from all three of them as to the age of the parties to be married, and they stated that Alma Lemmons was eighteen years old. I did not know Ernest Lemmons. I observed the young lady and she looked like she might be a young girl of 18 or 19 years old from her general appearance and dress. She looked like she weighed 125 pounds, had on a long dress and that turned down over her face, and her face gave the impression of one 18 or 19 years of age. John Galloway was a man clean shaven, about 25 years old, and weighed 135 or 140 pounds. Had dark hair and dark skin and had the appearance of being about 20 or 21 years old. They said they were from Winston. I had Ernest Lemmons, Alma Lemmons, and John Galloway each of them to sign statement and swear to it as it appears on the license. Before issuing the license I made inquiry as to the reliability of the parties applying for the license. I went into the sheriff's office and saw Dr. M. A. Bowers and told him there was a party from Winston-Salem wanting to secure a marriage license; that the contracting parties were Alma Lemmons and John Galloway, and I asked Dr. Bowers if he knew them. He said he did not know Alma Lemmons, but did know John Galloway. I asked him if he was a fellow of reliability, and he said he was a good reliable fellow and a carpenter at Winston and said, `I know him, I am his physician.' I have known Dr. Bowers ten years. I knew him at Thomasville where I lived and where he was a practicing physician. Knew his general character was good. Dr. Bowers has lived in Winston more than a year and he witnessed the license and the affidavit. And the parties applying were at the time in my office."
Cross-Examination: "I made no effort to call up the parties at Winston, either C. E. Lemmons or Virginia Lemmons. The girl said *Page 240 
there was no phone at their home. I relied upon the statement of Dr. Bowers as to the reliability of John Galloway. Dr. Bowers told me John Galloway was a reliable party. I knew Dr. Bowers was a man of high character and a good physician and whatever he said to me I could rely upon. I did not ask Dr. Bowers how long he had known Galloway or what chances he had to know his character. All I wanted to know was if he knew him and if he was a reliable man."
Dr. M. A. Bowers made an affidavit which, by consent, was used as a deposition. He stated, in part, as follows: "I told him (register of deeds) that I did not know Alma Lemmons but that I did know John Galloway, and told him that he was a carpenter. I also told him that in my opinion any statement that Galloway would make could be relied upon, as I had no reason to think otherwise from my personal knowledge and information I had of him. Then, after the license was written out and sworn to by the contracting parties. I witnessed their signatures and their marriage in the register of deeds' office by John Moyer, J. P."
At the conclusion of all the evidence defendant renewed his motion for judgment as of nonsuit. Motion allowed, and plaintiff appealed.
The testimony as to the appearance of the girl, with respect to her age, is conflicting; and, upon the question of reasonable inquiry, the facts are not admitted. Hence, considering the evidence in its most favorable light for the plaintiff, the accepted position on a motion to nonsuit, we think the case should have been submitted to the jury under proper instructions.Snipes v. Wood, 179 N.C. 349; Julian v. Daniels, 175 N.C. 549; Gray v.Lentz, 173 N.C. 346.
As said in Furr v. Johnson, 140 N.C. 157: "Where there is a conflict of evidence, whether there has been reasonable inquiry is to be submitted to the jury upon all the evidence under proper instructions; but if the facts are agreed, it is a matter of law," citing Joyner v. Roberts,114 N.C. 389. The jury alone may pass upon the weight of the evidence or the credibility of the witnesses.
The judgment of nonsuit will be set aside and the case referred to another jury.
Reversed. *Page 241